Crowley, whenever you're ready. Good morning. May it please the court, my name is Scott Crowley and I represent the appellant in this matter Sundersingh Bala. I would urge that the issue presented in this appeal is whether the appellant's agreement with the appellee to resolve a portion of a state employment grievance pertaining to state layoff policy also served as a general waiver of its pending claim for retaliation under Title VII of the Civil Rights Act. It is my argument that this matter is not simply resolved by resort to principles of contract interpretation, although I do argue that such principles fall in the appellant's favor. But much more is at stake in determining the validity of a waiver of rights under landmark remedial civil rights legislation, that is Title VII. That is why the Supreme Court in the Alexander case, Alexander v. Gardner Denver Company, mandated that such paragraph 4 and 5 of the agreement, it doesn't talk about giving up any rights except those that arise under the decision by the hearing officer. Is that a correct reading? I believe that is a correct reading. Title VII is nowhere dealt with in this agreement. I would agree with your honor in saying that. And when you refer back to the hearing officer's decision of February 1st, 2013, which is found on pages 44 and 45 of the record, I believe it's other places too, but it's in those two pages, the hearing officer decided only the issue of the layoff policy under Commonwealth of Virginia layoff policy and procedure number 130, and decided that the Department of Conservation and Recreation violated that policy in the way they selected Mr. Bala for layoff. And when the parties decided to resolve that issue, they were only resolving this decision of the hearing officer. If they intended to resolve, be more comprehensive in what they were resolving, they could have, and they certainly should have, stated that they were resolving the entire dispute between the parties. Well, you know, if they weren't resolving the entire dispute, if the EEOC wrote and said there's nothing more we can do, why didn't your client object to that and say, oh wait, there's a lot more? He did. He did, your honor. He did precisely that. Once the agreement was signed on July 7th, 2011, the athlete sent the agreement to the EEOC and said the parties have reached an agreement. Take the matter off your docket. It's resolved. And when my client found that out, he immediately wrote back and said, no such thing. What did the EEOC say to him? They simply said, okay, if there's no agreement, we're going to issue you notice of right to sue and you can take it to court. But there, and that's an important point because both the athlete and the district court have latched on to this idea that the EEOC has somehow made a conscious determination that the agreement of July 7th, 2011, was intended to be a global resolution. And in fact, no such thing happened. The EEOC simply took the proffer from the athlete if the case was resolved and put it, and closed the file. Is the employer aware of this? This communication between the EEOC? Oh, yes. And they say nothing? I don't want to speak for what they say, but... Here's your chance. You do get to speak. Well, I know that the EEOC, when they found out that, from my client's point of view, the case was not resolved, they simply said, okay, then we're going to issue you notice of right to sue. But they've never made any cognitive analysis that the agreement was intended to resolution of the retaliation claim. I don't know if I'm making myself clear. No, you did. Can I get a drink of water? I should have done that. It's allergy season, we understand. Thank you, John. Now, the district court determined the matter by reference to Virginia law of contract interpretation and concluded that there was no ambiguity to the agreement. And it refused to consider evidence that the parties intended to only resolve the issue relating to the grievance hearing, grievance officer's decision reinstating the impellant to his former employment. The district court deemed such evidence outside the agreement and refused to allow it as parole evidence. The court specifically said that it was not going to allow parole evidence to create an ambiguity. We're not trying to create an ambiguity. When you review the email communication between the parties, in fact, I could refer the court to page 377, there's an email from May 3rd between the employer's human resources director and my client and said the parties agree as follows. Number one, you agree to sign whatever document agreeing to forget about the hearing officer's decision of reinstatement. And as we stated, that hearing officer's decision pertains solely to the state layoff policy and nothing to do with Title VII or retaliation. And then at number two, DCR would, which is Department of Conservation and Recreation, would maintain him as a wage employee performing his present duties at the current hourly rate. DCR would permit you to keep your current enhanced retirement and DCR would promise, guarantee that your current wage position will not be abolished until three years from the date. There's nothing in there from which the parties could say that they intended to resolve the entire matter, including the EEOC claim that was still pending for the retaliation and discrimination. And therefore, this evidence could be considered by the court to determine whether there was a mistake between the parties. But there's nothing in this email that contradicts the meaning of the settlement agreement that the parties entered into on July 7th of 2011. So the court certainly should have considered it and I put case law in my reply brief to show that the court can consider evidence outside the agreement to show that there was a mistake as to what the parties were agreeing to. Now in the Fifth Amendment paper, it's explained that the Supreme Court's knowing and voluntary formulation to have effect, it implies a degree of specificity to have that effect. There's no degree of specificity in this July 7th agreement. The waivers of Title VII claims are not to be taken lightly. The court considered a variety of factors. One is the clarity and specificity of the release language. Now in this case, the agreement failed to specifically mention the retaliation claim, although that claim had been pending in the EEOC for 20 months as of July of 2011. A second factor is the claimant's education and business experience. The appellant is an educated person, but not naturally born in the United States and without legal training. The amount of time for deliberation, the email exchanges between the parties disclosed that the appellee was rushing the appellant to sign the document quickly and the appellant was delayed because of him suffering from an eye ailment that required surgery. Fourth, the claimant knew or should have known his rights upon execution. Since the agreement does not mention the retaliation claim, it is reasonable to suppose that the appellant believed that the agreement had no effect on his retaliation claim. Another factor is whether the plaintiff was encouraged to seek the benefit of counsel. He was encouraged in the agreement. He did not choose to do so. Whether there was an opportunity for negotiation. There was opportunity for negotiation and as I stated, as referenced in some of the emails preceding the agreement, all of the negotiations focused solely on the agreement's hearing officer's decision and not the retaliation claim. Finally, the factor is whether there is consideration given for the exchange. The consideration given for the exchange was that the plaintiff would be allowed to keep the retirement he had been accruing and on the other hand, the consideration they got is that the agreement would only last three years. My client would be a part-time employee for three years and then the agreement would end, which is in fact what happened. There was no consideration paid to the appellant for waiving his claim for retaliation. Now it is important to know that the case cited by the district court for the proposition that settlement agreements are treated as contracts that are subject to general principles of contract law and that decision is Deloach v. Lorillard tobacco from 2004 is not a Title VII claim at all, but instead is a class action antitrust between tobacco farmers and cigarette manufacturers. Neither the district court nor the appellate can cite to any fourth circuit or Supreme Court decision that stands for the proposition that a waiver of remedial civil rights statute claims are to be treated simply as general contracts. In the back of the appellee's brief, they cite the unpublished four circuit decision in I think it's Duras-Lewitz, I'm sure I mangled that, which was a the precise language in the agreement said that the parties or the claimant waived any claim of any kind, whatever, and the court noted that there was no allegation from the claimant that his signing of that was not knowing or voluntary. In this case, we don't have any language even approaching that level of specificity and my client has alleged repeatedly both to the district court and of course to this court that his signing of the agreement was not knowing or voluntary as as pertaining to the Title VII claim. It is clear from the language that the manifest and intended the parties was only regarded in the lay office determined by the hearing officer. It made no mention of any other claim. As John Roberts of the Supreme Court Chief Justice famously said, the way to stop discrimination on the basis of race is to stop discriminating on the basis of race. And I would take that formulation and say the way to ensure that a waiver includes a civil rights claims by ensuring that the claim is specifically included in the waiver. That easily could have been done. I urge the court to hold as other circuits have done that waivers of this sort, of this magnitude, because it's a remedial statute, are not simply subject to state contract law interpretation and construction but require knowing and voluntary acquiescence. That requires an element of subjective intent. Now there's obviously objective intent and subjective intent but when the objective intent the parties is not clear, as I believe it's not clear in this case, the court is then permitted to look deeper into the subjective intent of the claimant when he signed the papers. And that analysis is not appropriate for summary judgment. That analysis requires consideration by the trier of fact and cannot be disposed of simply on summary judgment without looking in the full context of what the parties were discussing and what they were agreeing to. Unless the court has any questions. Yes sir. I'm still trying to figure out why I didn't know he had complained about the EEOC not the J.A. I'll tell you what you can do. Since you got some reply time left. Yeah I just thought of that. Let me do that judge. Okay I'll sit down. All right Mr. Fleming. May it please the court my name is Gregory Fleming and I appear today on behalf of the Department of Conservation and Recreation commonly known as DCR. The district court judgment should be affirmed because the appellant has settled all the claims he had from the Department of Conservation and Recreation. The operative facts that serve as the basis for his grievance settlement are the same facts that serve as the basis for the EEOC charge. The appellant has in fact to date received everything he negotiated in the settlement agreement and there are no new claims that were different from the claims raised in the grievance matter and the EEOC charge that have not already been addressed by the July 7, 2011 settlement agreement. This current advocacy by the appellant is simply a classic case of buyer's remorse that should not be permitted by this federal court. Now Bala claims that the set forth in the in the appeal were the same as I said the operative facts serve as a basis for Bala's EEOC complaint are the same facts that provide the basis for his grievance claims. Mr. Bala alleges he did not knowingly and intelligently execute the settlement agreement with DCR to waive and resolve all of his claims with DCR. This argument is not supported by the facts. Mr. Bala has admitted he filed numerous grievance actions and claims in the past EEOC charges as well as grievance matters against DCR in his tenure with the agency which stretched over 24 years in two different increments. Well I'm a little concerned frankly this paragraph four and five was inarticulately wrong at best but the hearing officer's decision the only right court at Bala was his right to reinstatement based on a proven violation of administrative policy that's what the decision was made and that's why the agreement was reached. It was dealing only with that. Yeah if I may in addressing that the grievance matters that Mr. Bala filed there was a May 2009 grievance as well as an October 2009 grievance. His EEOC charge was actually filed in November 2009. As the appendix excuse me as a joint appendix also indicates Mr. Bala in December of 2009 requested that his grievance matters be combined. His grievance matter in May of 2009 involved a failure to promote as well as retaliation. His grievance in October of 2009 addressed the layoff issue and a retaliation. It was by Mr. Bala's actions in December of 2009 that those grievance matters were combined. So the retaliation claim was a part of the matter that was resolved on July 7, 2011. As I indicated the grievance matters were consolidated and the EEOC charge alleged discrimination based on race, age, national origin, and retaliation. In fact the EEOC charge repeats the same facts set forth in Mr. Bala's May 2009 grievance and October 2009 grievance. The operative facts for each of these administrative processes are the same. The EEOC as the court asked earlier also sent an acknowledgment in August of 2007 both to the plaintiff and to the agency basically acknowledging the settlement. Now this court in the Keefe versus Aldridge matter has a firm summary judgment for the employer because the parties mutually manifested then specific theories of liability alleged but also to preclude any future litigation. I will submit to the court that the July 7, 2011 settlement that Bala knowingly and intelligently signed waived his EEOC claim. The grievance claims and the EEOC charge each allege retaliation, age, race, and national origin discrimination. The operative facts are the same for each proceeding. Mr. Bala cannot appear before this court to indicate that he's a novice to these proceedings because he's indicated he filed multiple matters in the past. Also this court has permitted the waiver of employment claims. In the past, ADEA claims before the statute was amended which specifically stated you had to state that in the settlement or contract as well as FMLA claims. Also the EEOC did not need to, in the Dershowitz case, specifically sign off on the release and the employee had been given the opportunity to consult with a lawyer. Thus the court found the employee voluntarily and knowingly executed the release. In the present case, these same facts are present. In Whiting versus John Hopkins, another matter before this court, this was an FMLA claim that recognized that settlements may include broad release of employment claims. In Whiting, the Department of Labor did not have to monitor or sign off on a settlement between private parties and in addition the EEOC encourages the settlement between employers and employees. The district court in reviewing the July 7, 2009 settlement agreement, in fact, followed Virginia law. And in Virginia law, they looked at the settlement agreement and explicitly agreed to laws of Virginia in the choice of law provision which is contained in the agreement. Virginia law follows the plain meaning rule and that's how the district court analyzes matter. The application of the rule means the court must look within the document and the terms of the document to express the intended to apply Virginia law. In Berry v. Klinger, which is Supreme Court case in Virginia, Virginia Supreme Court once again followed the plain meaning rule. In Berry, the court stated the contract must be read as a single document. Its meaning is to be gathered from all its associated parts, assembled as a unitary expression of the agreement of the parties. Then in this case, the grievance claims do not stand alone. They are based on specific operative facts. Claims for failure to promote and layoff based on Ballas age, race, and national origin of retaliation. The same claims that are raised in Ballas EEOC charge in November of 2009. The settlement agreement in this case. What could the EEOC give him that he was not awarded? Yeah, I would submit to the court that the relief that could have been garnered by the EEOC as well as the relief through the settlement or the grievance process was the same relief. If you look at the, in the appendix, the April 21st 2011 letter which talked about once the EDR had decided that Mr. Ballas needed to be reinstated, it goes through the type of relief that Mr. Ballas could have received which included back pay. He had been receiving his retirement for a year. He either had to pay that back. It also received, I believe, some health benefits. There was also a promotion during that time period because he was going to be reinstated as if he, as of January 1st 2010. So whatever would have naturally occurred in the employment situation, he would have been entitled to all of that. Mr. Ballas chose not to be reinstated because he did not want to pay back a year's worth of benefits and the other issues in terms of selling the financial issue. So that was his decision not to be reinstated. Your position is the EEOC couldn't give him anything else? No sir. Anything more than what you were? He would have gotten through the company system. Yes, sir. That would be my position. And then when did you first know that he was questioning the EEOC's ability to continue with the case or believing that the EEOC could continue in spite of the settlement? Yeah, I believe the dates, the settlement agreement was signed July 7th 2011 and I believe the letter from the acknowledgement letter from the EEOC, I think it's August 27th, I believe, of 2012. After that I think there was also, and I would attribute this to maybe the left hand not knowing what the right hand is doing in terms of the EEOC, because there was an instance where they were seeking a conciliation or mediation, I guess, with Mr. Ballas. That at some point failed and I would submit to you. Yes, sir. I would submit to the court that that's why they eventually sent the right to sue letter. I do acknowledge that Mr. Ballas also complained, but the agreement that was signed, I would still maintain, solve or resolve all of the claims because there are no new operative facts. In fact, there are no additional damages that he could garner at this point and the settlement agreement has in fact been completed as of June of 2014. There's nothing else for the court, even if the matter were sent back, to award to Ballas. He has resolved everything. There are no new facts. There are no damages that now can be garnered. Your Honor, Mr. Ballas negotiated the terms of the settlement agreement. Mr. Ballas has benefited by the settlement agreement. As I indicated, he has no present claims to get damages since he resolved his damaged claims for the issues, race, age, national origin and the retaliation claim in the settlement agreement. This court, even in the Dershowitz case, says specific claims being waived do not have to be maintained in the settlement document. I know counsel makes the point that the specific retaliation claim, but that would ignore all the facts that lead up to the point. The fact that he filed two separate grievances, the fact that each grievance claimed a claim for retaliation, the fact that he consolidated the grievances and the fact that he negotiated the terms of the settlement agreement. I would submit that the court has to take all that into consideration in determining whether it is a knowing and intelligent waiver by Mr. Ballas. In addition, the EEOC does not need to specifically sign off on a released settlement agreement. The settlement agreement clearly addressed all of Ballas' claims to DCR. As I indicated, the court rejected this opportunity to be reinstated and waived his claims when he signed the settlement agreement. If you look in the joint appendix I was referring to earlier on pages 122 to 123, the April 21st letter, which basically tells Mr. Ballas he is due to be reinstated, but it goes through all the he negotiated, signed, and ratified upholding the district court judgment. Same underlying facts serve as a basis for the EEOC claim. Why does Ballas claim he was not promoted? Because of his age, race, national origin, and in retaliation for filing previous grievance matters. Why does Ballas claim he was laid off? Because of his age, race, national origin, and in retaliation for filing prior grievance claims. Each of these issues was addressed in the July 7th with settlement agreements or contracts in the employment context. And whether the court looks at it, and I would submit to the court that you should apply the Virginia contract law, but I know counsel has articulated in his brief the totality of the circumstances test. And that test includes seven things that the court may look at. You don't have to have all of them. They're not exclusive. But one of the points he made earlier was Mr. Ballas knowledge or understanding about the system. By education, if you look on the joint appendix on page 73, Mr. Ballas has a bachelor of law degree, a master's in economics, a master's in business administration, and is a certified general accountant. I would submit to the court that Mr. Ballas' knowledge of the grievance proceedings, the EEOC charge, is very well informed. And I think he clearly knew that the document he was signing off waived his claims and there was nothing remaining. And I would submit to the court, ask the court to affirm the judgment by looking at all the facts in the record, and that the judgment of the district court should be affirmed. Happy to take any questions that the court may have. Your Honor, in response to your specific question, I don't have anything in the appendix that shows Mr. Ballas' communication with the EEOC. What I do have is when you look in the appendix on pages 384 and 385, you have the acknowledgment of settlement from the EEOC dated August 27, 2012. I think they're identical except for one is And then following that, on page of the appendix 390, there is a notice of right to sue, conciliation of failure sent to Mr. Ballas on October 25th. And to the person that grieved, there's a notice that the EEOC was concluding its processing of the charge. The EEOC found reasonable cause to believe that the violations of the statute occurred. And then it said that since the parties could not obtain a settlement with the respondent, that would provide you relief. So the last statement from the EEOC, October 25, 2012, on page 390 of the joint appendix, says that the parties could not reach a settlement. Implicitly reversing the decision of August 27th, which I don't really think is a decision. It was an acknowledgment of the settlement. And I just wanted to address one thing that my colleague argued that Mr. Ballas could have received all of the same relief from the state employee grievance that he could have received under Title VII. That's simply not the case. Under the state employment grievance, the only remedy available for a wrongful termination or any violation of the employment code is back pay. Whereas this court is well aware, Title VII is much more generous. Back pay is only one element of remedy available under Title VII or any of the employment statutes under 42 U.S.C. 1981A. Mr. Ballas could have also argued for equitable relief, including front pay, damage to his reputation and his career, emotional harm, reinstatement, things of that nature. The final thing I'll say, unless there's questions from the court, is that when the hearing officer first opined on the retaliation claim, Mr. Ballas had not yet exhausted his administrative remedies. He had filed a, well soon after he filed, right after the grievance, he filed a charge with the EEOC, but he had not received any notice of right to sue. When the company offered him reinstatement, did he make demands at that time of him for these other elements you say he would have been entitled to? No. No. In his mind, it's very clear. In his mind, that was on a separate track. And keeping in mind that that retaliation claim was on a separate track, it was on a separate track, Your Honor, because the state employee grievance had always been focused solely on the state layoff policy. And the retaliation was never considered. And so it makes perfect sense. It naturally follows that when the parties decided to enter into the agreement on July 7th, 2011, that they were only dealing with that decision from the state hearing officer. And that hearing officer had only decided the issue on the violation of the state layoff policy. It had nothing to do with retaliation. And when you read the agreement, it's very clear that it's written that it has nothing to do with pending retaliation. I mean, if the parties had really intended for this to be a global settlement, they could have said, this resolves all issues of any kind, and we specifically include the pending EEOC claim, and in fact, appellate, we're requiring you to withdraw that claim as part of this agreement. None of those words were mentioned. And I would submit that's not a matter for drafting. That's a matter of the party's intent. And it wasn't until we appear for summary judgment that Judge Hudson all of a sudden said, wait a second, I'm not going to hear all this argument about the elements of McDonnell Douglas and decide whether you have the facts necessary under a retaliation claim to proceed to trial. This whole matter was resolved by this agreement I found. And we were so taken aback, I asked Judge Hudson, can we brief that issue? Because this is coming up for the first time. He said, of course you can. And he allowed us to do so. So the idea that the state had always, I mean, they could have moved for a motion to dismiss at the very outset of the claim if they had thought that they had some magic bullet that disposed of this claim. And they never did. Thank you, sir. Okay, thank you. I will come down and greet counsel and take a short break, about five or 10 minutes.
judges: William B. Traxler, Jr., J. Harvie Wilkinson III, Henry F. Floyd